UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| HILLARY HOLT,         ) | |
|                  ) | |
|    Plaintiff,     ) | |
|                  ) | |
| v.                 ) | No. 1:13-cv-00102 |
|                  ) | Senior Judge Haynes/Bryant |
| SHERIFF ENOCH GEORGE, in his    ) | **Jury Demand** |
| individual and official      ) | |
| capacity,           ) | |
|                  ) | |
|    Defendant.     ) | |

**TO: The Honorable William J. Haynes, Jr., Senior District Judge**

## REPORT AND RECOMMENDATION

Defendant Sheriff Enoch George has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry No. 46). Plaintiff has not responded in opposition.

This motion has been referred to the undersigned Magistrate Judge for report and recommendation ("R&R"). (Docket Entry No. 35).

For the reasons stated below, the undersigned Magistrate Judge **RECOMMENDS** that the defendant's motion for summary judgment be **GRANTED**; that the complaint be **DISMISSED WITH PREJUDICE**; and that all other pending motions (Docket Entries No. 32 and No. 42) be **TERMINATED AS MOOT**.

## Statement of the Case

While confined at Maury County Jail ("Jail") in Columbia, Tennessee, the plaintiff, proceeding pro se and in forma pauperis, filed her complaint (Docket Entry No. 1) on September 6th, 2013, in which she alleges Fourth, Eighth, and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983.

Plaintiff makes several separate claims regarding: (1) medical care, (2) inadequate food, (3) inadequate and unsanitary housing, (4) lack of recreation, (5) sleeping on the floor, (6) lack of a law library, (7) inadequate hygiene, (8) exposure to raw sewage, (9) contact visitation, (10) sexual discrimination, and (11) illegal search.

With regards to plaintiff's claim for medical care, she clarifies that she is in fact not making a claim for denial of medical care. (Docket Entry No. 47-1, p. 28). She asserts that she always received medical care when she needed it while she was incarcerated at the Jail. (Id. at p. 21).

Plaintiff further claims that the food provided by the Jail is served in very small portions and is watered down. (Docket Entry No. 1, p.5). Plaintiff complained to a correctional officer detailing these claims and each time the officer would address the issue with the ABL staff that controlled the food. (Docket Entry No. 47-1, pp. 26-28). Plaintiff never brought issues regarding inadequate food to the defendant's attention. (Id. at p. 28). Further, plaintiff admits that she was never denied a meal while at the Jail and that she was not injured in any way by the food. (Id. at pp. 26-27).

Thirdly, plaintiff makes claims of inadequate and unsanitary housing. Plaintiff alleges that the Jail is infested with mold on the mats and shower walls, air vents are rusted, the pod is infested with spiders and roaches, and uniforms don't get washed daily. (Id. at pp. 18-20). Plaintiff asserts that the moldy conditions are a health

2

threat; however, she admits that she was never actually injured by the mold. (Id. at p. 18). With regards to the insect complaints, plaintiff mentions that she was bitten by a spider one time and received medical care accordingly. (Id. at pp. 18-19). Plaintiff also states that the uniforms were filthy because they were not always washed daily and as a result they caused bacterial infections. (Id.) However, Plaintiff states that the bacterial infection began after she gave birth to her son (Id. at p. 20) and in her grievance, plaintiff does not state that the uniforms were causing the bacterial infections. (Id. at p. 21). Furthermore, plaintiff always received medical treatment for the bacterial infections when she needed it and she has no permanent injuries from the infections. (Id. at pp. 19-21). Plaintiff states that defendant was not personally involved in keeping the conditions of the Jail unsanitary. (Id. at p. 22). Ultimately, plaintiff holds defendant responsible simply because he was in charge of the Jail. (Id.)

Next, plaintiff claims that inmates are not given adequate time outside. (Docket Entry No. 1, p. 5). Plaintiff states that "from July to August 2013 we have been out a total of seven (7) times." (Id. at p. 6). Plaintiff further explains that her claim focuses on the fact that inmates did not get enough fresh air time outside. (Docket Entry No. 47-1, pp. 32-33). Plaintiff admits that she was allowed to walk around inside the Jail and in fact a group of female inmates, including plaintiff, do sit ups for exercise. (Id.) Furthermore, plaintiff did write a grievance to Lieutenant Wagonschutz to which the

Lieutenant responded that she would get with the officers to discuss recreation time (Id. at p. 33); however, plaintiff admits that she never told defendant George about her lack of recreation. (Id. at pp. 32-33). Plaintiff further admits that she was not injured by the lack of recreation and was never diagnosed with any condition related to the lack of fresh air or recreation. (Id. at p. 33).

Plaintiff alleges further that she had to sleep on the floor while she was at the Jail from some point roughly between August and November of 2013. (Id. at p. 34). Plaintiff alleges that she had back pain as a result of sleeping on the floor. (Id.) She sought and received medical attention for her alleged back pain. (Id.) Ultimately, plaintiff cannot recall if she grieved sleeping on the floor but she thinks that she probably did. (Id. at pp. 34-35). Plaintiff does not allege facts that defendant George was personally involved in causing plaintiff to sleep on the floor while incarcerated at the Jail.

Next, plaintiff complains that inmates didn't have access to the law library. (Docket Entry No. 1, p. 5). Plaintiff asserts that the female inmates only had a book cart that the Jail staff would bring into the female area. (Docket Entry No. 47-1, pp. 25-26). Plaintiff requested a law book be brought to her and a week later she received the book. (Id.) Plaintiff admits that lack of access to the law library did not stop her from receiving a law book and subsequently filing documents with the court. (Id. at p. 26). Ultimately, plaintiff states that she was not denied access to the courts. (Id.)

4

In her seventh claim, plaintiff makes a claim for inadequate amounts of hygiene products. (Docket Entry No. 1, p. 5). Plaintiff complains of the hygiene products supplied by the Jail (deodorant, toothpaste, and toilet paper) because "the deodorant did nothing but break you out and make you raw." (Docket Entry No. 47-1, pp. 35-36). Further, plaintiff claims that female inmates were not provided adequate amounts of sanitary napkins. (Docket Entry No. 1, pp. 7-8). Plaintiff admits however, that inmates receive additional hygiene products from their families who are allowed to bring inmates shampoo and body wash once a month. (Docket Entry No. 47-1, pp. 35-36). Plaintiff states that she was never denied hygiene products and never sought medical treatment for any issue related to the hygiene products at the Jail. (Id.)

Next, plaintiff states that the "toilets do not flush properly resulting in exposure daily to raw sewage." (Docket Entry No. 1, p. 5). Plaintiff does not allege any injury from her exposure to the raw sewage nor defendant's involvement in the matter. (Docket Entry No. 47-1, at pp. 23-24). Instead, plaintiff claims that sewage got on the floor after the maintenance man who came to fix a toilet had to remove the toilet but that no sewage ever got on her mat or clothes. (Id.)

Next, plaintiff claims that not being allowed contact visitation with her newly born son amounts to "harsh imprisonment" and deprives her of her rights as a TDOC inmate. (Docket Entry No. 1, p. 6). Plaintiff states that she was pregnant when she was first incarcerated at the Jail and was granted furlough to give birth to her son. (Docket

5

Entry No. 47-1, pp. 28-29). Plaintiff alleges that after she gave birth to her son, she could only visit him through a glass window. (Id. at p. 29). Moreover, plaintiff alleges that because her mother is a felon, the Jail did not allow Plaintiff's mother to visit Plaintiff. (Id.)

The Jail has a strict policy prohibiting inmates from having contact visits. (Docket Entry No. 49, ¶ 22). This policy is a security measure in place to control the entrance of contraband into the facility and to maintain institutional security and order. (Id.) As such, plaintiff was not able to have contact visitations with her son. (Docket Entry No. 47-1, p. 29). Furthermore, the Jail has a policy prohibiting anyone convicted or on trial for a felony from visiting inmates at the Jail. (Docket Entry No. 49, ¶23). However, as plaintiff admits, the Jail made an exception for plaintiff to allow plaintiff's mother who is a felon to bring the child for visitation once a month. (Id. at ¶ 24; Docket Entry No. 47-1, p. 29). Ultimately, plaintiff asserts that because she was not allowed to have contact visits with her son, she was unable to develop a bond with her son. (Docket Entry No. 47-1, p. 29).

Further, plaintiff makes claims of sexual discrimination while she was incarcerated at the Jail. (Docket Entry No. 1, p. 5). In her deposition, plaintiff states that her sexual discrimination claims are for the lack of outside jobs for female inmates. (Docket Entry No. 47-1, p. 36). Plaintiff alleges that the male trustee inmates got to smoke cigarettes and that the male trustees had outside food brought

6

to them. (Id.) Plaintiff alleges that female inmates were not afforded the same privileges. Plaintiff holds defendant George liable because he was over the Jail. (Id. at p. 37).

The Jail's procedure for assigning jobs requires first that the inmate be sentenced and have no disciplinary, medical, or mental health issues that would prevent him or her from working. (Docket Entry No. 49, ¶ 8). Once those requirements are met, the inmate is added to the job list after which the Jail Administrator fills any available job from the list. (Id.) The only distinction made throughout the job assignment process is between misdemeanor inmates and felony inmates. (Id. at ¶ 9). Misdemeanor inmates and felony inmates are not eligible for the same job placements due to the varying levels of security they require. (Id. at ¶¶ 9-10). For this reason, misdemeanor inmates are allowed to go out into the community and work without the presence of correctional officers. (Id. at ¶ 10).

Plaintiff was a felony inmate while she was incarcerated at the jail; accordingly, she was not eligible for any misdemeanor job assignments. (Id. at ¶ 11). Felons work on one of three job assignments: (1) trustee; (2) work bus; or (3) kitchen. (Id. at ¶ 12). Typically, male felons work as trustees at the Jail. (Id. at ¶ 13). There are inside and outside trustees. (Id.) At times, defendant George did allow the outside trustees to wear civilian clothes and to receive food from their families; however, these activities were just occasional allowances and not guaranteed privileges. (Id.)

Furthermore, male felons working as inside trustees or on the work bus were required to wear the Jail uniforms. (Id. at ¶ 14). Such inmates had access to the Jail food only. (Id.) Male felons on the work bus detail work for the Tennessee Highway Department ("THD"). (Id. at ¶ 15). This job assignment is highly labor intensive and the highway department has never expressed an interest in having women on its work crews. (Id.)

Plaintiff, as a felony inmate, worked in the kitchen during her period of incarceration at the Jail. (Id. at ¶ 21). No male felons worked in the kitchen at the time plaintiff was incarcerated. (Id. at ¶ 16). Just like the male trustees who also worked inside, kitchen workers were required to wear the Jail uniforms and only had access to the Jail food. (Id.) In accordance with Tennessee Corrections Institute Code 1400-01.17(2), male and female inmates are to be kept completely out of sight, sound, and physical contact with inmates of the opposite sex. (Id. at ¶ 20) The primary reason for separating male and female inmates is to maintain institutional safety and order. (Id.)

While the job assignments at the Jail vary, inmates who work still receive the same 2-for-1 privilege. (Id. at ¶ 19). In other words, for each day worked, the inmates are credited two days towards their sentence regardless of the job they worked. (Id.)

The Jail Administrator has no knowledge of or documentation to show that plaintiff requested a different job assignment during her incarceration. (Id. at ¶ 21). Furthermore, it is notable that working

8

at the Jail is completely voluntary and there is no requirement that inmates apply for a job assignment. In actuality, during plaintiff's period of incarceration, the Jail housed between thirty (30) and fifty (50) female felons, and over one hundred (100) male felons. (Id. at ¶ 20). The Jail has ten (10) job openings available to the female felons and fourteen (14) job openings available to male felons. (Id.) As such, this actually resulted in a higher percentage of female felons than male felons being able to work. (Id.)

Lastly, plaintiff alleges that the Jail violated her Fourth Amendment rights when officers conducted searches of her cell without her being present. (Docket Entry No. 1, p. 8). Plaintiff claims that defendant George is responsible for the alleged constitutional violations because he is in charge of the Jail. (Docket Entry No. 47-1, pp. 37-38).

Plaintiff seeks injunctive relief and requests: (1) to be sent to prison, (2) for the air duct system to be cleaned and/or replaced, and (3) for the toilets and sewage systems to be fixed. (Docket Entry No. 1, p. 5). Plaintiff also seeks unspecified monetary damages of $50,000. (Id.)

Plaintiff brings claims against defendant Sheriff Enoch George in both his individual and official capacity, and states that the basis for holding defendant liable is because he was over the Jail. (Docket Entry No. 47-1, pp. 22, 37-38). In sum, plaintiff states that she has no permanent injuries from any of her allegations. (Id. at p. 38). Plaintiff's only stated injury is that she missed forming a bond with

9

her son because she couldn't have contact visits with him while at the Jail[1]. (Id.)

## Conclusions of Law

Defendant's Motion for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendant moves the Court for summary judgment on the plaintiff's claims. The defendant argues that no genuine issue of material fact exists such as to preclude the Court from finding for defendant as a matter of law. Defendant seeks summary judgment on the following legal grounds: first, that defendant is entitled to summary judgment in his official capacity on plaintiff's § 1983 claims because plaintiff failed to plead that an unconstitutional policy, practice, or custom caused any of the harm alleged; and second, that defendant is entitled to summary judgment in his individual capacity on plaintiff's § 1983 claims because he is immune from suit on the basis of qualified immunity.

Furthermore, defendant asserts that he is entitled to summary judgment on plaintiff's contact visitation claim because the plaintiff has no constitutional right to contact visits. Also, defendant claims he is entitled to summary judgment on plaintiff's Fourth Amendment claim because prisoners have no expectation of privacy in their cells.

Plaintiff has not responded to defendant's motion for summary judgment. Pursuant to Local Rule 56.01(g), plaintiff's failure to

---

[1] Plaintiff states that she has been able to form a bond with her son now; just that this bond is not as close as she would have liked it to be. (Id. at pp. 38-39).

10

respond to defendant's statement of material facts (which relies
heavily on plaintiff's deposition) indicates that the asserted facts
are not disputed for purposes of summary judgment.

## Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that
summary judgment should be rendered if "the movant shows that there is
no genuine dispute as to any material fact and the movant is entitled
to judgment as a matter of law." Importantly, a district court cannot
grant summary judgment in favor of the movant simply because the other
party has not responded. F.T.C. v. E.M.A. Nationwide, Inc., 767 F.3d
611, 629-30 (6th Cir. 2014); see also Carver v. Bunch, 946 F.2d 451,
454-55 (6th Cir. 1991). The court is required to examine the movant's
motion for summary judgment to ensure that he has discharged his
initial burden of demonstrating the absence of any genuine issue of
material fact. Id. Furthermore, while a pro se complaint is held to
less stringent standards than formal pleadings drafted by lawyers,
Haines v. Kerner, 404 U.S. 519, 520-21 (1972), those liberal standards
do not apply to the consideration of substantive law and evidence once
the case has reached the summary judgment phase. Johnson v. Stewart,
2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citing, e.g., Tucker v.
Union of Needletrades, Industrial and Textile Employees, 407 F.3d 784,
788 (6th Cir. 2005)).

## Analysis of Plaintiff's § 1983 Claims

Title 42, § 1983 of the United States Codes states that:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any

11

State or Territory or the District of Columbia,
subjects, or causes to be subjected, any citizen of
the United States or other person within the
jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or
other proper proceeding for redress. . . .

Under § 1983, a claimant must show "(1) the deprivation of a right
secured by the Constitution or laws of the United States and (2) the
deprivation was caused by a person acting under color of state law."
Street v. Corrections Corp. of America, 102 F.3d 810, 814 (6th Cir.
1996) (quoting Simescu v. Emmet County Dept. of Social Services, 942
F.2d 372, 374 (6th Cir. 1991)). Here, plaintiff alleges that the
defendant deprived plaintiff of her rights under the Eighth Amendment.
There is no challenge to the state actor prong.

A. Official Capacity Action

Plaintiff brings claims against defendant in his official
capacity. "A suit against an individual in his official capacity is
the equivalent of a suit against the governmental entity" of which the
official is an agent. United Pet Supply, Inc. v. City of Chattanooga,
Tenn., 768 F.3d 464, 483 (6th Cir. 2014) (quoting Matthews v. Jones, 35
F.3d 1046, 1049 (6th Cir. 1994)); see also Will v. Mich. Dep't of State
Police, 491 U.S. 58, 71 (1989). Thus, the plaintiff's claims against
defendant in his official capacity are claims against Maury County,
Tennessee. It is well established that municipalities and other local
governmental entities are considered "persons" to whom § 1983 applies.
Monell v. Dep't of Social Services of City of New York, 436 U.S. 658,
690 (1978). However, in order to hold the governmental entity liable

12

under § 1983, plaintiff must establish that the entity's "policy or custom" played a part in the alleged violation of federal law. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Monell, supra at 694).

As pointed out by the defendant, plaintiff has neither alleged nor submitted evidence to establish an unconstitutional policy or custom, written or otherwise. Therefore, plaintiff's official capacity claim cannot proceed. Summary judgment should be **GRANTED**.

### B. Individual Capacity Action

Plaintiff alleges that defendant individually deprived plaintiff of her constitutional rights. Defendant's summary judgment motion raises the affirmative defense of qualified immunity to the claims for money damages asserted against him, based on plaintiff's asserted failure to establish any constitutional violation.[2] As to plaintiff's Eighth Amendment claims, a prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is objectively "sufficiently serious" and (2) the prison official's state of mind is one of "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective prong is met when the plaintiff shows that she is "incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective prong is met

---

[2] "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (quotations omitted). The second prong is not contested. Defendant's individual liability thus depends upon whether plaintiff has established a triable issue of any constitutional violation.

when the plaintiff alleges facts which show that the official knows of and disregards an excessive risk to inmate health or safety. Id. at 837. Most importantly, the Supreme Court has held that the "Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments." Id. (internal quotations omitted). A prison official's duty under the Eighth Amendment is to ensure reasonable health and safety. Id. at 844. Ultimately, "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotations omitted).

Claim 1: Medical Care

Plaintiff clarified in her deposition that any claims for medical care have been dropped. (Docket Entry No. 47-1, p. 28). As such, the court will not analyze this claim further and summary judgment should be **GRANTED**.

Claim 2: Inadequate Food

Plaintiff complains that the food provided by the Jail is inadequate. (Docket Entry No. 1, p. 5). Courts have held that inmates must be provided nutritionally adequate food that has been "prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (quoting Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980)). Inmate complaints about preparation or quality of prison food have generally been held as "far removed from

14

Eighth Amendment concerns." Cunningham v. Jones, 567 F.2d 653, 659-60 (6th Cir. 1977). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). In order to state an Eighth Amendment claim under § 1983, plaintiff must establish both the objective element of a sufficiently serious deprivation and the subjective element that the official acted with deliberate indifference.

Plaintiff's inadequate food claims fail to establish that her Eighth Amendment rights were violated inasmuch as she was never denied food, was never injured by the food, and admits that she never brought issues regarding inadequate food to the defendant's attention. (Docket Entry No. 47-1, pp. 26-28). Rather, plaintiff complained to an officer detailing her concerns of watered-down food. (Id.) Accordingly, the officer addressed the issue with the ABL staff that controlled the food. (Id.) Furthermore, plaintiff does not allege facts showing that the food she received was nutritionally inadequate simply because it was watered-down or not to her liking. Therefore, plaintiff fails to establish either element of her Eighth Amendment claim under § 1983 because there was no serious deprivation and defendant George was not deliberately indifferent because he did not know of and disregard a risk to plaintiff's health or safety. Therefore, summary judgment should be **GRANTED**.

15

Claim 3: Inadequate and Unsanitary Housing

Plaintiff claims that there is unsanitary black mold on the mats and shower walls, air vents are rusted, the pod is infested with spiders and roaches, and uniforms don't get washed daily. (Docket Entry No. 47-1, pp. 18-20). Plaintiff mentions that she was bitten by a spider one time and received medical care accordingly. (Id. at pp. 18-19). Regarding such claims concerning an inmate's conditions of confinement, the Supreme Court has held that the Constitution "does not mandate comfortable prisons" and only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337 (1981)). As established in Farmer v. Brennan, the Eighth Amendment only imposes a duty of adequate clothing for the inmate, not necessarily the clothing the inmate might prefer to wear. 511 U.S. at 832. Furthermore, "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey v. Wilson, 832 F. 2d 950, 954 (6th Cir. 1987).

Plaintiff asserts that the mold conditions she identifies are a health threat; however, she admits that she was never actually injured by the mold. (Id. at p. 18). In fact, plaintiff does not have any sustained injuries from any of these unsanitary housing claims. (Id. at pp. 18-21). Furthermore, plaintiff admits that defendant was not personally involved in keeping the conditions of the Jail unsanitary.

16

(Id. at p. 22). Ultimately, plaintiff holds defendant responsible because he was in charge of the Jail. (Id.) By failing to establish an objectively sufficiently serious deprivation and that defendant George acted with deliberate indifference towards these conditions, plaintiff fails to make out either element necessary for her § 1983 Eighth Amendment claim. Thus, plaintiff's claims concerning unsanitary conditions fail and accordingly, summary judgement should be **GRANTED**.

## Claim 4: Lack of Recreation

Plaintiff claims that inmates are not given adequate time outside. (Docket Entry No. 1, p. 5). Courts have refused to adopt a per se rule that deprivation of outdoor exercise is a violation of the Eighth Amendment and have instead stated only that some form of regular outdoor exercise is important for inmates' well being[3]. Walker v. Mintzes, 771 F.2d 920, 927-28 (6th Cir. 1985). As stated in Farmer v. Brennan, the Eighth Amendment imposes duties on officials to "provide humane conditions of confinement" and to "ensure that inmates receive adequate food, clothing, shelter, and medical care." 511 U.S. at 832. Furthermore, the Sixth Circuit has not defined a minimum standard of recreation for adult prisoners. While a total deprivation of sunshine and fresh air may violate the Eighth Amendment, numerous

---

[3] Courts have outlined a number of factors to be considered when determining if the denial of exercise rises to the level of an Eighth Amendment violation. Such factors include physical or psychological injuries resulting from a lack of exercise, whether the size of the jail cell inhibits the ability to exercise, and the justifications for denial of the right to exercise outside the cell, among many others. Rodgers v. Jabe, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983)).

17

courts have dismissed claims for lack of access to fresh air or sunlight when the inmate has had some opportunity to engage in recreation or exercise and where the inmate does not allege that the limitations on outside time caused the inmate to suffer any adverse effect. See Robert Douglas Lyle #126159 v. Tennessee Department of Correction, et al., 2016 WL 3460256, at *2 (M.D. Tenn. June 24, 2016) (citing, e.g., Park v. Morgan, 2015 WL 1637168, at *3, (S.D. Ohio April 10, 2015) (collecting cases and dismissing claim that 60-day recreation restriction, preventing plaintiff from receiving fresh air or sunlight, violated Eighth Amendment)). Furthermore, the allegation of an injury or a substantial risk of serious harm is also necessary for a constitutional violation claim related to lack of recreation. Hardin v. Ruth, 2012 WL 5304191, at *6 (E.D. Tenn. Oct. 25, 2012). Therefore, to hold defendant liable, plaintiff must show both that the deprivation was sufficiently serious and that the prison official was deliberately indifferent to the risk to her health or safety in withholding outdoor recreation.

Plaintiff's recreation-based claims fail to establish a sufficiently serious deprivation. Plaintiff claims that "from July to August 2013 we have been out a total of 7 times." (Docket Entry No. 1, p. 6). She further explains that her claim focuses on a lack of fresh air time outside and not necessarily on a lack of opportunity for exercise. (Docket Entry No. 47-1, pp. 32-33). Ultimately, plaintiff states that she was not injured by the lack of recreation and was never diagnosed with any type of condition related to the lack of

fresh air. (Id. at p. 33). Plaintiff did write one grievance to
Lieutenant Wagonschutz regarding recreation time, following which she
assured plaintiff that she would discuss recreation time with the
officers. (Id.) The facts plaintiff provides do not make out an Eighth
Amendment violation because it appears that plaintiff was receiving
occasional outdoor recreation, could and in fact did exercise in her
cell, and was furthermore not harmed at all by not receiving
additional recreation outside. (Id. at pp. 32-33). With regards to
the second prong, plaintiff has not shown facts that demonstrate that
defendant George was deliberately indifferent to plaintiff's health or
safety. Therefore, plaintiff's allegations about outside recreation
fail to establish a triable Eighth Amendment claim, and summary
judgment should be **GRANTED**.

Claim 5: Sleeping on the Floor

Plaintiff next claims that she had to sleep on the floor while
she was at the Jail. (Id. at p. 34). Additionally, plaintiff states
that forty (40) inmates were housed in her pod which only had thirty-
two (32) bunks and as a result some inmates had to sleep on the floor.
(Docket Entry No. 1, p. 6). However, the Sixth Circuit has previously
rejected similar claims. See Jones v. Toombs, 77 F.3d 482, 1996 WL
67750, at *1 (6th Cir. Feb. 15, 1996); Cook v. Mohr, 897 F.2d 529, 1990
WL 25062, at *1 (6th Cir. March 9, 1990); Wells v. Jefferson Cty.
Sheriff Dep't, 159 F.Supp.2d 1002, 1011 (S.D. Ohio 2001). In Wells,
the court held that "having to sleep on a mattress on the floor or
being exposed to cold temperatures simply do not rise to the level of

19

a constitutional violation." Id. The Seventh Circuit has held likewise and stated that without allegations that plaintiff was placed in a cold cell in which she had to sleep on the floor for the purpose of punishment, the time spent under these conditions must be viewed as "merely a temporary inconvenience" and as an "inevitable consequence of overcrowding." Summers v. Sheahan, 883 F.Supp. 1163, 1169 (N.D. Ill. 1995) (citing Johnson v. Pelker, 891 F.2d 136, 138 (7th Cir. 1989). In Summers, the inmate was eventually given something to sleep on, and the court noted that "nothing in the Constitution requires elevated beds for prisoners." Summers, 883 F.Supp. at 1169. The Supreme Court has addressed the issue of prison overcrowding and stated that while the practice is undesirable, especially with regards to "double celling", it is not per se unconstitutional when the practice does not deprive prisoners of "essential food, medical care, or sanitation". Walker v. Mintzes, 771 F.2d 920, 928 (6th Cir. 1985) (citing Rhodes v. Chapman, 452 U.S. 337, 348 (1981)). Ultimately, as expounded upon in Rhodes, such prison conditions must amount to a deprivation of "life's necessities" before a violation of the Eighth Amendment can be found. Rhodes, 452 U.S. at 347.

Plaintiff's claim of sleeping on the floor while she was at the Jail falls short of stating an Eighth Amendment violation. Plaintiff states that she was sleeping on the floor at some point perhaps between August and November of 2013 and that the temperature in the Jail was cold. (Docket Entry No. 47-1, pp. 34, 38-39). As a result, plaintiff alleges that she had back pain for which she sought and

20

received medical attention. (Id.) Plaintiff admitted that she was not injured by the temperature in the Jail. (Id. at p. 39). At the time of her deposition, plaintiff stated that she had no permanent injuries as a result of any of her allegations with the exception of forming a bond with her child. (Id. at p. 38). Lastly, plaintiff does not allege that defendant George was personally involved in causing plaintiff to sleep on the floor. The absence of any sufficiently serious injury, as recognized by the plaintiff in her deposition, supports the finding that no constitutional violation occurred. With regards to the second prong of establishing an Eighth Amendment violation, there is no allegation suggesting "deliberate indifference" to the plaintiff's health. Defendant's motion for summary judgment with respect to this claim should therefore be **GRANTED**.

Claim 6: Lack of Law Library

Next, Plaintiff complains that female inmates didn't have access to the law library. (Docket Entry No. 1, p. 5). It is well established that prisoners have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977). Such a right of access to the courts requires prison officials to ensure that inmates have access to the courts that is "adequate, effective and meaningful." Id. at 822. Furthermore, courts have established that adequate law libraries in prisons are one such method for assuring adequate access to the court. Id. at 829-32. However, courts are ultimately concerned with a right of access to the courts, not necessarily to a prison law library. See Walker v. Mintzes, 771 F.2d 920, 932 (6th Cir. 1985). In

21

order to establish a viable claim for denial of access to the courts, a plaintiff must demonstrate some prejudice or actual injury as a result of the challenged conduct. Lewis v. Casey, 518 U.S. 343, 351 (1996).

Plaintiff's allegations that inmates didn't have access to the law library fall short of establishing a triable claim. Plaintiff requested a law book be brought to her and a week following her request, she received the book. (Docket Entry No. 47-1, pp. 25-26). Plaintiff admits that lack of access to the law library did not stop her from receiving a law book and subsequently successfully filing documents with the court. (Id. at p. 26). Further, plaintiff states that she was not denied access to the courts. (Id.) Plaintiff has not established that the inadequacy of the materials she was provided "caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim," or other such litigation detriment required to show prejudice stemming from the purported violation. Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996) (citing Lewis v. Casey, supra). In sum, plaintiff does not claim here that she was actually impeded in her access to the courts. Therefore, her claim falls short and defendant is entitled to summary judgment on this claim.

Claim 7: Inadequate Hygiene

Plaintiff also states claims for inadequate hygiene products. (Docket Entry No. 1, p.5). The Eighth Amendment does prohibit the denial of basic needs, including hygiene, see Estelle v. Gamble, 429

22

U.S. 97, 104 (1976); however, the plaintiff must show that she suffered extreme discomfort or that she had been completely denied hygiene products in order for her claim to prevail. See Argue v. Hofmeyer, 80 F. appx 427, 430 (6th Cir. 2002) (citations omitted). Without such a showing, a plaintiff's claim does not rise to the level of "cruel and unusual punishment." Rhodes v. Chapman established that prisoners are constitutionally entitled to "the minimal civilized measure of life's necessities" established by contemporary standards of decency, "[b]ut conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." Rhodes, 452 U.S. at 347. The Sixth Circuit has held that "temporary inconveniences do not give rise to the Eighth Amendment violations." Dellis v. Corr. Corp. of Am., 257 F. 3d 508, 511 (6th Cir. 2001).

Plaintiff's complaints of a limited number of sanitary napkins for the women and hygiene products supplied by the Jail that were not to her liking are not sufficient to make out an Eighth Amendment violation. Plaintiff admits that inmates receive additional hygiene products from their families once a month. (Docket Entry No. 47-1, pp. 35-36). Furthermore, plaintiff states that she was never denied hygiene products and never sought medical treatment for any issue related to the hygiene products provided by the Jail. (Id.) By failing to show extreme discomfort or a complete denial of hygiene products, plaintiff has failed to establish a triable Eighth Amendment claim. As such, the undersigned finds that the defendant should be entitled to summary judgment on plaintiff's inadequate hygiene claim.

23

Claim 8: Raw Sewage

Next, plaintiff seeks to recover for exposure to raw sewage. (Docket Entry No. 1, p. 5). Specifically, plaintiff states that the "toilets do not flush properly resulting in exposure daily to raw sewage." (Id.) Plaintiff does not allege any injury from her exposure to the raw sewage nor defendant's involvement in the matter. (Docket Entry No. 47-1, pp. 23-24). Plaintiff claims that the sewage got on the floor after a maintenance man came to fix a toilet. (Id.) However, she clarifies that the sewage did not get on her mat or clothes and that she was not injured by any exposure to raw sewage. (Id.) This court, in agreement with the Eighth Circuit, has held that "exposure to leaking sewage in a prison cell with no accompanying physical harm is insufficient to satisfy the objective component of a constitutional violation." Keel v. Davidson County Sheriff's Office, 2015 WL 799724, at *3 (M.D. Tenn. Feb. 25, 2015) (citing, e.g., Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996)). In addition, the subjective element of "deliberate indifference" to an excessive risk to inmate health or safety must also be met for plaintiff to prevail on her claim. Therefore, "not every overflowed toilet in a prison amounts to a constitutional violation." Smith, 87 F.3d at 268. Without facts showing a physical harm resulting from the exposure to sewage from toilets and facts showing defendant's deliberate indifference to the matter, plaintiff fails to make out a viable Eighth Amendment claim. Therefore, summary judgment should be **GRANTED**.

Claim 9: Contact Visitation

Next, plaintiff claims that not being allowed contact visitation with her newly born son amounts to "harsh imprisonment" and deprives her of her rights as a TDOC inmate. (Docket Entry No. 1, p. 6). Courts have previously struck down similar such claims and held instead that visitation policies that limit contact visits with prisoners, including restrictions on contact visits by children, are reasonably related to legitimate penological interests and thus such regulations do not violate the Eighth Amendment prohibition of cruel and unusual punishment. See Bazzetta v. McGinnis, 124 F.3d 774, 778 (6ᵗʰ Cir. 1997). Ultimately, "prison inmates have no absolute constitutional right to visitation." Bellamy v. Bradley, 729 F.2d 416, 420 (6ᵗʰ Cir. 1984) (citing Newman v. Alabama, 559 F.2d 283 (5ᵗʰ Cir. 1977) (citations omitted)). Further, the Supreme Court has opined:

> That there is a valid, rational connection between a ban on contact visits and internal security of a detention facility is too obvious to warrant extended discussion. The District Court acknowledges as much. Contact visits invite a host of security problems. They open the institution to the introduction of drugs, weapons, and other contraband. Visitors can easily conceal guns, knives, drugs, or other contraband in countless ways and pass them to an inmate unnoticed by even the most vigilant observers. And these items can readily be slipped from the clothing of an innocent child, or transferred by other visitors permitted close contact with inmates.

Block v. Rutherford, 468 U.S. 576, 586 (1984).

Plaintiff claims that the Jail denied her contact visits with her newborn son. (Docket Entry No. 47-1, pp. 17, 30). Plaintiff states that after giving birth to her son, she was only permitted visits through a glass window. (Id. at pp. 28-30). As a result, plaintiff

25

claims that she was unable to develop a bond with her son. (Id. at p. 29). However, plaintiff admits that the Jail made an exception to their policy of not allowing felons to visit inmates in order for plaintiff's mother, a felon, to bring plaintiff's son for visitation once a month. (Id. at p. 29; Docket Entry No. 49, ¶¶ 23-24). Case law is clear in establishing that the Jail ultimately has the discretion to ban contact visits in the interest of institutional safety. See Bazzetta, 124 F.3d at 778. Therefore, because plaintiff has no constitutional right to contact visits, and the Jail's policy on contact visits is related to ensuring security, plaintiff's contact visitation claim fails. Accordingly, summary judgment on this claim should be **GRANTED**.

Claim 10: Sexual Discrimination

Plaintiff makes claims of sexual discrimination while she was incarcerated at the Jail. (Docket Entry No. 1, p. 5). In general, the Equal Protection Clause requires the government to treat similarly situated people alike. See Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994). Therefore, "dissimilar treatment of dissimilarly situated persons does not violate equal protection." Id. In order to proceed with an equal protection claim, "a female plaintiff must establish that she was accorded treatment unequal to that of her male counterparts." Sullivan v. City of Cleveland Heights, 869 F.2d 961, 963 (6th Cir. 1989). In a prison environment specifically, the standard for satisfying the Equal Protection Clause of the Fourteenth Amendment is to assure that sufficient parity has been achieved between male and

26

female inmates. Glover v. Johnson, 35 F. Supp. 2d 1010, 1011 (E.D. Mich), aff'd, 198 F. 3d 557 (6th Cir. 1999). The Equal Protection Clause does not require identical treatment of male and female inmates. Id. at 1021. Additionally, it must be kept in mind that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Therefore, even if a literal difference in opportunities offered to male and female inmates were to constitute dissimilar treatment under the Equal Protection Clause, that dissimilar treatment would nevertheless still be permissible if it satisfies the reasonable relation standard articulated in Turner. See Glover, 35 F.Supp.2d at 1021.

Plaintiff's sexual discrimination claims fail to establish a viable equal protection claim. In her complaint, plaintiff alleges several instances of sexual discrimination including that the male trustee inmates got to smoke cigarettes and that the male trustees had outside food brought to them. (Docket Entry No. 47-1, p. 36). The plaintiff asserts that in direct contrast to the males, the female inmates were not afforded these same privileges.

In order for plaintiff to succeed on her claim, she must demonstrate that the Jail discriminated against her on the basis of her gender. In support of his position that plaintiff cannot make that showing, defendant submits the affidavit of Debra Wagonschutz, Jail Administrator. (Docket Entry No. 49). The Jail's procedure for

27

assigning jobs first requires that the inmate be sentenced and have no
disciplinary, medical, or mental health issues that would prevent him
or her from working. (Id. at ¶ 8). Once those requirements are met,
the inmate is added to the job list after which the Jail Administrator
fills any available job from the list. (Id.) This procedure does not
include gender as a factor. The only distinction made throughout the
entire job assignment process is between misdemeanor inmates and
felony inmates. (Id. at ¶ 9). Felony inmates can be placed in one of
three different job assignments: (1) trustee; (2) work bus; or (3)
kitchen. (Id. at ¶ 12). As a felony inmate, plaintiff was assigned to
work in the kitchen during her time at the Jail. (Id. at ¶ 21). Just
like the male felons who also worked inside the Jail as the inside
trustees, the kitchen workers were required to wear the Jail uniforms
and only had access to the Jail food. (Id. at ¶ 14). In this way, the
female felon inmates working inside the Jail are treated equally to
the male felon inmates working inside the Jail. From time to time,
defendant George did allow the outside trustees to wear civilian
clothes and to receive food from their families. (Id. at ¶ 13).
However, these activities were not guaranteed privileges but
occasional allowances. (Id.) These facts clearly demonstrate that
outside trustees were not allowed these occasional privileges on
account of their gender because other male felons in other job
positions did not receive these same occasional benefits.

Furthermore, different jobs require different hours based on the
nature of the job; however, all inmates receive the same 2-for-1

28

benefits where for each day worked they get two days credited toward their sentence. (Id. at ¶ 19). Therefore, it is the nature of the job and not gender that determines the differences in hours worked by inmates.

Lastly, it is apparent that while plaintiff was at the Jail, female felons actually had the same number of job opportunities[4] as the male felons because female felons could work as the sewing trustee, female pod trustee, or in the kitchen while male felons could work as inside trustee, outside trustee, or on the work bus. (Id. at ¶¶ 16–17). Furthermore, it is notable that working at the Jail is completely voluntary and there is no requirement that inmates apply for a job assignment. While it is true that females did not work on the work bus with the Tennessee Highway Department, this was not due to the Jail preventing them from this work but rather due to the fact that the job was highly labor intensive and the THD never expressed an interest in having women on its work crews. (Id. at ¶ 15). As the facts indicate, there was parity in the Jail's treatment of male and female felons with regards to their work assignments. Moreover, the Jail Administrator has no knowledge of or documentation to show that plaintiff requested a different job assignment during her incarceration. (Id. at ¶ 21).

---

[4] The Jail housed between thirty (30) and fifty (50) female felons, and over one hundred (100) male felons. (Id. at ¶ 20). The Jail has ten (10) job openings available to the female felons and fourteen (14) job openings available to male felons. (Id.) As such, this resulted in a higher percentage of female felons than male felons being able to work. (Id.)

Plaintiff has also failed to demonstrate how the alleged sexual discrimination injured plaintiff.

There is also a strong penological interest of institutional safety and order. In her affidavit, the Jail Administrator, Debra Wagonschutz, states that these concerns were the primary reason for having separate jobs for male and female inmates. (Id. at ¶ 16). Additionally, Tennessee Corrections Institute Code 1400-01.17(2) states that male and female inmates are to be kept completely out of sight, sound, and physical contact with inmates of the opposite sex. (Id.)

Turner necessitates that judicial deference is to be given to jail administrative decision-making concerning institutional operations. Glover, 35 F.Supp.2d at 1011. As such, the undersigned finds in this case that plaintiff has failed to show any prejudicial defect in the procedure for determining job placements in the Jail because the Jail did not treat plaintiff differently on the basis of her gender, and there exists a strong penological interest of safety and order in separating male and female inmates. In conclusion, plaintiff's claim of sexual discrimination cannot proceed and summary judgment should be **GRANTED**.

Claim 11: Illegal Search

Lastly, plaintiff alleges that the Jail violated her Fourth Amendment rights when officers conducted searches of her cell without her being present. (Docket Entry No. 1, p. 8). However, it is well established that "society is not prepared to recognize as legitimate

30

any subjective expectation of privacy that a prisoner might have in his prison cell." Hudson v. Palmer, 468 U.S. 517, 526 (1984). Therefore, "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." (Id.) In conclusion, with regards to plaintiff's privacy claim, the Fourth Amendment simply does not apply and as such plaintiff's claim is without merit and summary judgment should be **GRANTED.**

In sum, for the above mentioned reasons, plaintiff has failed to show that the defendant violated her Eighth Amendment right to be free from "cruel and unusual punishments." Furthermore, plaintiff has failed to make out a sexual harassment claim, a violation of the Fourth Amendment, an access to courts claim, or a claim for visitation rights. Therefore, defendant is entitled to summary judgment on all claims.

Furthermore, plaintiff's claims for injunctive relief are moot because she is no longer confined at the Jail. See Turner v. Safley, 482 U.S. 78, 89-90 (1987). It is undisputed that plaintiff was transported from the Maury County Jail on November 1, 2013. (Docket Entry No. 47-1, pp. 8, 13-15). Accordingly, plaintiff's claims for injunctive relief are moot.

Lastly, to the extent that plaintiff seeks to assert the rights of other inmates, plaintiff lacks standing to bring such claims. See Walton v. Dallman, 1990 WL 146915, *2 (6th Cir. October 3, 1990) (citing Newson v. Norris, 888 F.2d 371, 381-82 (6th Cir. 1989)). Plaintiff has not filed a class action lawsuit pursuant to Rule 23 of

the Federal Rules of Civil Procedure. Therefore, the undersigned finds that plaintiff's request for injunctive relief should be **DENIED**.

**RECOMMENDATION**

In light of the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the defendant's motion for summary judgment be **GRANTED**; that the complaint be **DISMISSED WITH PREJUDICE**; and that all other pending motions (Docket Entries No. 32 and No. 42) be **TERMINATED AS MOOT**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this R&R in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed to this R&R in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this R&R can constitute a waiver of further appeal of this R&R. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

**ENTERED** this 20th day of July 2016.

John Bryant

JOHN S. BRYANT
United States Magistrate Judge